DECISION AND JUDGMENT ENTRY
{¶ 1} Travis Williams appeals the finding of guilty by a Lucas County Court of Common Pleas three-judge panel after he entered a guilty plea to the charge of aggravated murder with an attached aggravated circumstance specification. Because the prosecution presented ample evidence for the court to find Williams guilty beyond a reasonable doubt of the aggravated murder of Adorra Foster with the specification that she was under 13, we affirm.
 FACTS {¶ 2} On July 1, 2001, an Emergency Medical Services ("EMS") unit arrived at the home of Williams and his girlfriend, Aleise Woods, in response to a 911 telephone call. The first responder found Wood's daughter, ten-month old Adorra Foster, on the floor unresponsive. The EMS technicians saw no vital signs but still made efforts to revive the child. She was pronounced dead at the emergency room of St. Vincent's Mercy Medical Center. That evening, Toledo Police Department detectives questioned Williams about Adorra's injuries. In the course of the interview, Williams confessed to causing the injuries that resulted in the baby's death. The Lucas County Coroner's Office later determined the cause of death to be "craniocerebral injuries due to shaken-multiple impacts syndrome" and the manner of death to be homicide.
 {¶ 3} On July 10, 2001, Williams was indicted on one count of aggravated murder, a violation of R.C. 2903.01(C),[1] with an attached aggravated circumstance specification pursuant to R.C. 2929.04(A)(9)[2] and 2941.14(B).[3] Williams was indicted on a second count of murder under R.C.2903.02(B).[4] The aggravated circumstance specification attached to count one made him eligible for the death penalty under R.C. 2929.04(A)(9).
 {¶ 4} Eventually, Williams entered into a plea agreement with the Lucas County Prosecutor's Office, which specified that he would enter pleas of guilty to Count 1, the aggravated murder, and to the aggravated circumstance specification. In exchange, if a three-judge panel determined he was guilty of aggravated murder and the attendant specification, the state agreed that it would dismiss Count 2 and not pursue the death penalty but rather would recommend that Williams should receive life in prison with the possibility of parole after he served 25 years. Williams waived his right to a jury trial and proceeded before a three-judge panel under Crim.R. 11(C)(3)[5] and R.C. 2945.06.[6]
This procedure is required when a guilty plea is entered in a capital aggravated murder case under State v. Green,81 Ohio St.3d 100, 1998-Ohio-454, at the syllabus.
 {¶ 5} Although the three-judge panel had the statutory option, it did not dismiss the attached specification. After a two day hearing, the panel unanimously found Williams to be guilty of aggravated murder with an aggravated circumstance specification.
 {¶ 6} The panel then proceeded to the sentencing and mitigation phase. It considered the plea agreement between the state and Williams, Williams's guilty pleas, the Lucas County Adult Probation Department's pre-sentence report, and the psychological summary of Williams. The panel also considered the aggravating circumstance of which Williams was found guilty and the mitigating factors outlined under R.C. 2929.04(B).[7]
After reviewing the evidence, the aggravating circumstance of which he was found guilty, and the mitigating factors, the panel unanimously found beyond a reasonable doubt that the aggravated circumstance did not outweigh the mitigating factors. The panel then unanimously imposed a sentence upon Williams of life imprisonment with parole eligibility after 25 full years of imprisonment. Williams now appeals the findings of the three-judge panel.
 ASSIGNMENTS OF ERROR
I. "Defendant-Appellant's conviction is against the manifest weight of the evidence."
II. "Defendant-Appellant's conviction is not supported by sufficient evidence and is therefore a denial of due process."
 SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE STANDARD {¶ 7} Because both assignments of error are interrelated, they will be addressed together. We find that there was sufficient evidence to support the panel's findings and that the findings are also supported by the manifest weight of the evidence.
 {¶ 8} Manifest weight of the evidence means that a greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380,387, quoting Black's Law Dictionary (6th Ed. 1990) 1594. The Ohio Supreme Court has noted: "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id., citing Tibbs v. Florida
(1982), 457 U.S. 31, 42. To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses. Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial.
 {¶ 9} Here, the factfinder was a three-judge panel. Three judges heard the testimony of witnesses, observed their body language, evaluated voice inflections and any gestures, perceived the interplay between witnesses and the examiner, and watched their reactions in the courtroom. Upon appellate review, we are to accord due deference to the credibility determinations made by the factfinder. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.
 {¶ 10} Sufficiency of the evidence asks whether the evidence is legally adequate to support a verdict on all elements of an offense. State v. Thompkins (1997), 78 Ohio St.3d 380, 386-87. The reviewing court is to examine the trial evidence to determine whether, if believed, it would convince the average mind of the defendant's guilt beyond a reasonable doubt. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 11} Because sufficiency is required to take a case to a jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Lakewood v. Dorton, 8th Dist. No. 81043, 2003-Ohio-1719, at ¶ 32, citing State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462.
 {¶ 12} Williams pleaded guilty to Count 1, the aggravated murder, and the attached specification, and his plea was accepted by the three-judge panel. Typically, a plea of guilty to a criminal charge waives a defendant's right to challenge sufficiency or manifest weight of the evidence. Crim.R. 11(B)(1) states that "[t]he plea of guilty is a complete admission of the defendant's guilt." By entering a plea of guilty, a defendant surrenders the right to have the state prove guilt of the crime charged beyond a reasonable doubt. State v. Buelow (Jan. 17, 1992), 2d Dist. No. 12739. Therefore, a guilty plea waives any dispute about the adequacy of the evidence. State v. Oliver
(May 5, 1988), 8th Dist. No. 53823 And, "[t]he issue of manifest weight is not germane to a plea of guilty as made pursuant to Crim.R. 11(C)." State v. Dawson (May 11, 1989), 8th Dist. No. 55463. Normally, by entering a guilty plea, a defendant waives any right to challenge the sufficiency or manifest weight of the evidence on appeal. Death cases, however, are different.
 {¶ 13} Crim.R. 11(C)(3) requires that "[w]hen a defendant pleads guilty to aggravated murder in a capital case, a three-judge panel is required to examine witnesses and to hear any other evidence properly presented by the prosecution in order to make a Crim.R. 11 determination as to the guilt of the defendant." State v. Green, 81 Ohio St.3d 100, 1998-Ohio-454, at the syllabus. The prosecution must still present enough evidence to prove the elements of aggravated murder and any attached specifications beyond a reasonable doubt. We believe the prosecution met that requirement in this case.
 ANALYSIS {¶ 14} In order to sustain a conviction for aggravated murder under R.C. 2903.01(C), the prosecutor must prove beyond a reasonable doubt that the victim was under the age of 13 at the time of the commission of the offense, that the offense occurred in the appropriate jurisdiction, and that the defendant purposely caused the death of the victim. To prove an aggravated circumstance specification under R.C. 2929.04(A)(9), the prosecution must prove beyond a reasonable doubt that the victim was under the age of 13 at the time of the commission of the offense, and that the defendant was either the principal offender or that the defendant committed the offense with prior calculation or design.
 {¶ 15} With respect to the elements in Williams's case, several are undisputed. The prosecution presented a certified copy of Adorra's birth certificate, showing her birth date to be August 8, 2000; therefore, her death on July 1, 2001 occurred when she was almost 11 months old. Williams does not dispute that he was the principal offender in the commission of the offense. The prosecution showed that the injuries which caused Adorra's death occurred in Toledo, Lucas County, Ohio, thus establishing venue.
 {¶ 16} The real issue centers on Williams's mental culpability. Williams argues that the panel could not find that he acted purposely beyond a reasonable doubt. Under R.C.2901.22(A), "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 17} After carefully reviewing the record in this matter, especially the testimony of paramedic Kathy McConkey, Lucas County Deputy Coroner Dr. Diane Scala-Barnett, and Williams's own statements at his police interview, we find that the prosecution presented ample evidence for the panel to find beyond a reasonable doubt that Williams acted purposely.
 {¶ 18} Kathy McConkey, a paramedic firefighter and registered nurse who was the first responder, testified that the child was not breathing and did not have a pulse upon the EMS team's arrival. She stated that members of the team attempted to revive Adorra before transporting her to the emergency room, but their efforts were unsuccessful. McConkey testified that there was an obvious bruise on Adorra's left posterior bicep. She reported that Adorra was pronounced dead shortly after arriving at the emergency room of St. Vincent's Mercy Medical Center.
 {¶ 19} Dr. Scala-Barnett, an expert in forensic pathology and the doctor who performed Adorra's autopsy, also testified before the panel. Upon an external examination of Adorra, she found a total of 18 bruises to the head, all of similar diameter and spacing, grouped together in regions. Dr. Scala-Barnett stated the bruises were consistent with impact by knuckles. She also found two bruises on the back of Adorra's shoulder, and three on her mandible. All the bruises were inflicted at the same time and were relatively recent. At a minimum, there were five separate blunt trauma "impact zones" on Adorra's body.
 {¶ 20} Dr. Scala-Barnett testified that upon an internal examination she found the infant had extensive subgaleal hemorrhaging caused by multiple, overlying impacts. Also, she observed a depressed skull fracture. Such fractures are typically caused by impact with a table or counter corner, and because of the elasticity of an infant's bones, considerable force would be needed to cause such a fracture. She also testified that Adorra had patchy subdural hemorrhages on her brain consistent with multiple shaking impact syndrome and that the hemorrhaging on Adorra's optic nerve sheathes is seen only with shaking. Dr. Scala-Barnett testified that Adorra's injuries were consistent with impact forces sustained by "falling out of seven or eighth story windows" or "high velocity motor vehicle accidents." The ultimate cause of Adorra's death was determined to be "craniocerebral injuries caused by multiple shaking impact syndrome." The death was ruled a homicide.
 {¶ 21} In his interview with Toledo Police Department detectives, Williams himself confessed to shaking Adorra. During the questioning, he emphasized repeatedly how frustrated he was. Williams talked about how he was frustrated that his mother took custody of his own child for whom he still had to pay child support, and that he had another child on the way with Aleise — all while he was out of work. He described how the baby had been sick, very fussy, and crying a lot. When he was asked by a detective, "Was she crying and she wouldn't stop crying so you shook her?" Williams responded, "Yeah, I mean, it was more or less out of frustration." In addition, he admitted that he knew from parenting classes and from an acquaintance that had shaken and killed a baby how shaking a baby could cause its death.
 {¶ 22} When examining the testimony of Ms. McConkey, Dr. Scala-Barnett, and Williams's own statements, we find that the prosecution presented more than enough evidence for the panel to find beyond a reasonable doubt that Williams acted purposely. The medical evidence describes multiple blunt impacts consistent with grabbing and punching, and hemorrhaging that could only be caused by violent shaking. Adorra also had a skull fracture, which would require considerable force to inflict. Williams's own words admit his frustration at the time of his actions because of the loss of custody of his child, his child support obligations, his girlfriend's pregnancy, and his unemployment. He admitted shaking Adorra even though he acknowledged he knew that such an action could be fatal to the baby. Upon review of all the evidence, the three-judge panel could reasonably find that Williams specifically intended to engage in the conduct that caused Adorra's death.
 CONCLUSION {¶ 23} The record shows that the testimony of Ms. McConkey and Dr. Scala-Barnett, as well as Williams's own statements, provided ample evidence for the panel to find all the elements of the offense proven beyond a reasonable doubt. Thus, the evidence was sufficient, and the panel's verdict was not against the manifest weight of the evidence. The prosecution, therefore, met its obligations under Crim.R. 11(C)(3).
 {¶ 24} Accordingly, Williams's assignments of error are found not well-taken and the verdict of the Lucas County Court of Common Pleas is affirmed. Williams is ordered to pay to court costs of this appeal as specified under App. R. 24.
Judgment Affirmed.
Knepper, J., Lanzinger, J., Singer, J., concur.
[1] R.C. 2903.01(C) states: "No person shall purposely cause the death of another who is under thirteen years of age at the time of the commission of the offense."
[2] R.C. 2929.04(A)(9) allows the imposition of the death penalty if "[t]he offender, in the commission of the offense, purposely caused the death of another who was under thirteen years of age at the time of the commission of the offense, and either the offender was the principal offender in the commission of the offense or, if not the principal offender, committed the offense with prior calculation or design."
[3] R.C. 2941.14(B) states, in part: "Imposition of the death penalty for aggravated murder is precluded unless the indictment or count in the indictment charging the offense specifies one or more of the aggravating circumstances listed in R.C.2929.04(A)."
[4] R.C. 2903.02(B) states: "No person shall cause the death of another as the proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of R.C.2903.03 or R.C. 2903.04."
[5] {¶ a} Ohio Crim.R. 11(C)(3) states:
"{¶ b} With respect to aggravated murder committed on and after January 1, 1974, the defendant shall plead separately to the charge and to each specification, if any. A plea of guilty or no contest to the charge waives the defendant's right to a jury trial, and before accepting a plea of guilty or no contest the court shall so advise the defendant and determine that the defendant understands the consequences of the plea.
"{¶ c} * * *
"{¶ d} If the indictment contains one or more specifications, and a plea of guilty or no contest to the charge is accepted, the court may dismiss the specifications and impose sentence accordingly, in the interests of justice.
"{¶ e} If the indictment contains one or more specifications that are not dismissed upon acceptance of a plea of guilty or no contest to the charge, or if pleas of guilty or no contest to both the charge and one or more specifications are accepted, a court composed of three judges shall: (a) determine whether the offense was aggravated murder or a lesser offense; and (b) if the offense is determined to have been a lesser offense, impose sentence accordingly; or (c) if the offense is determined to have been aggravated murder, proceed as provided by law to determine the presence or absence of the specified aggravating circumstances and of mitigating circumstances, and impose sentence accordingly."
[6] R.C. 2945.06 provides, in part, that "[i]f the accused is charged with an offense punishable by death, he shall be tried by a court to be composed of three judges, consisting of the judge presiding at the time in the trial of criminal cases and two other judges to be designated by the presiding judge or chief justice of that court * * * If the accused pleads guilty of aggravated murder, a court composed of three judges shall examine the witnesses, determine whether the accused is guilty of aggravated murder or any other offense, and pronounce sentence accordingly.
[7] Under R.C. 2929.04(B), mitigating factors include "the nature and circumstances of the offense, the history, character, and background of the offender," and the factors set forth in R.C. 2929.04(B)(1) through (B)(7).