[Cite as *State v. Moss*, 2017-Ohio-1507.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO.  2016-A-0047** |
| DAVID V. MOSS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 CR 137.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Matthew C. Bangerter,* P.O. Box 148, Mentor, OH  44061 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1}    Appellant, David V. Moss, appeals the sentence of the Ashtabula County Court of Common Pleas, following his guilty plea to four counts of endangering children and one count of attempted felonious assault.  At issue is whether the trial court considered the seriousness and recidivism factors in R.C. 2929.12 in sentencing appellant.  For the reasons that follow, we affirm.

{¶2}    On February 27, 2015, appellant was charged in Case No. 2015 CR 137, in a 14-count indictment with three counts of kidnapping, three counts of felonious

assault, three counts of endangering children, two counts of sexual battery, and three counts of gross sexual imposition. Appellant pled not guilty.

{¶3} This case was consolidated with Case No. 2015 CR 63, in which appellant was charged with one count of endangering children, one count of kidnapping, and one count of felonious assault. Appellant also pled not guilty to these charges.

{¶4} On May 9, 2016, pursuant to the parties' plea bargain, appellant agreed to plead guilty to four counts of endangering children, each committed against one of four different children, and one count of attempted felonious assault committed against one of those children. As each of these offenses was a felony-three, each carried a potential sentence of three years in prison, with a potential maximum sentence of 15 years. In exchange, the state agreed to dismiss the remaining 13 counts.

{¶5} After the court advised appellant of his rights and appellant waived those rights, the court asked the prosecutor to provide a factual basis for the plea. The prosecutor said that the four victims were adopted by appellant in 2003. The oldest victim is R.M., who moved out of appellant's house on his eighteenth birthday in 2009. The three remaining children in the home were biological siblings - two girls, A.M. (age 15) and S.M. (age 13), and R.D.M., a 20-year old developmentally-delayed male.

{¶6} The prosecutor said that on August 26, 2013, the two girls, while locked in their bedroom by appellant pursuant to his usual practice, picked the lock on their door, took the keys to appellant's van, and drove the van for several miles until it crashed. The girls begged the responding Ohio State Highway Patrol Trooper not to call appellant because they were afraid he would beat them. The trooper charged the girls with unauthorized use of a motor vehicle, arrested them, and took the girls to Juvenile Court. They were placed on house arrest.

2

{¶7}　On September 9, 2013, an Ashtabula County Juvenile Probation Officer went to appellant's house.　After interviewing the girls and appellant, the officer suspected abuse and reported it, resulting in an investigation by the Ashtabula County Children Services Board and the Ashtabula County Sheriff's Department.

{¶8}　On September 12, 2013, a Children Services worker and a Sheriff's deputy arrived at appellant's house and told him they were removing the three children. Although appellant initially refused to allow the officials to enter his house, he eventually relented and they removed the children.

{¶9}　During the ensuing investigation, several interviews were conducted with the two female victims.　They reported that between September 2011 and September 2013, appellant kept them locked in their bedroom and also kept R.D.M. locked in a separate bedroom 22 to 23 hours every day.　The girls said that appellant permitted them to leave their rooms once in the morning and sometimes once in the evening to get something to eat and then they had to return to their rooms.

{¶10}　The girls said that after the August 26, 2013 incident involving the van, in addition to keeping their door locked from the outside of the room, appellant put a padlock on their bedroom door.

{¶11}　The girls said appellant put buckets in their bedroom and in their brother's room and they were to use them to defecate and urinate.　He also brought them toilet paper.　The children were only allowed to shower and change underwear once a week.

{¶12}　Appellant only allowed the girls to wear underwear or very light clothing. The bedrooms contained only beds – no other furniture or clothes.　All the furniture that would have been in these rooms was crowded in the hallway.　The girls' clothes were kept in a dresser in the hallway.

3

{¶13} Appellant boarded up the window in the girls' bedroom with a large piece of plywood, which he screwed into the wall around the window, so they could not see out. Appellant also stapled a curtain around the window in R.D.M.'s bedroom for the same reason. A.M. said she carved marks into the headboard of the girls' bed every day she and S.M. were locked in their room to keep track of the days of the week.

{¶14} Appellant did not allow the children to attend public school. He enrolled them in home schooling, but soon thereafter, stopped schooling them altogether, even the developmentally-delayed boy. R.D.M. spent his days and nights locked in his bedroom alone. At one point, the home schooling agency contacted Children Services and voiced their concerns about the children.

{¶15} The girls said appellant did not allow them to socialize with anyone outside the house. They were not permitted to have any friends or to talk to any other children.

{¶16} Investigators also interviewed R.M., the oldest of the four victims who moved out in 2009. He said that, between 2001 and 2002, when he was nine or ten years old, appellant and his wife beat him so severely with belts and a paddle that he bled profusely and had to wear a diaper for a week. From 2007 to 2009, appellant locked R.M. in his bedroom virtually all day, every day.

{¶17} The girls said that appellant repeatedly beat them and R.D.M., their developmentally-delayed brother, with a paddle. The paddle was used so often and so violently on them that it always had blood stains on it. When the prosecutor began outlining appellant's sexual abuse of both girls, as set forth in the presentence report, the court said that since appellant was not pleading guilty to the sex offenses, the court would not be considering that conduct in its sentence.

4

{¶18} On September 17, 2013, five days after the children were removed from the house, Sheriff's deputies executed a search warrant there. While searching the house, they located several items that corroborated the children's reports. While the padlock on the girls' bedroom door was removed, it was located on a counter and the key to the padlock was found hanging just outside the girls' bedroom door.

{¶19} The deputies found three buckets and a large piece of plywood in the basement, which were described by the victims. The screws in the plywood matched exactly the holes located in the wall around the widow in the girls' room. The deputies saw a curtain was still stapled around the window in the disabled boy's room. The deputies saw the marks on the headboard of the girls' bed that A.M. described. They saw the bedrooms contained only beds and the hallway was cluttered with pieces of bedroom furniture.

{¶20} The deputies interviewed two other older children who had been adopted by appellant before the victims. These other children said that appellant abused them by locking them in their rooms and beating them with a wooden paddle. They were shocked to learn that appellant was permitted to adopt any other children.

{¶21} After this factual recitation, appellant pled guilty to four counts of endangering children and one count of attempted felonious assault, each being a felony-three. The court found that appellant was advised of his rights, that he waived those rights, and that he voluntarily pled guilty. The court accepted appellant's guilty plea, found him guilty, ordered a pre-sentence report, and continued the matter for sentencing.

{¶22} During the sentencing, appellant admitted the "discipline" he inflicted went too far. He said he was sorry, but he blamed the children and said their special needs

were too much for him to handle. He said he failed to parent these children because Children Services did not train him properly.

{¶23} The attorney for appellant's accomplice, his wife, ReJeana Moss, who pled guilty at the same time, admitted a paddle was used and sometimes "things did go overboard." He said "we do agree and admit that there was some locking in the rooms," but he said it only began after the girls took the van. He said the Mosses thought the girls should have been jailed longer in the detention center, so "there was some additional punishment at home that did include locking in the room." The wife's attorney admitted the Mosses boarded up the windows, but he said, according to Mrs. Moss, they only did that because the girls had shown their body parts to a neighbor.

{¶24} The prosecutor said *appellant knew the children had special needs when he took them into his home,* fostered them, and then adopted them. He said *Children Services gave appellant training to provide proper care and support for these children*.

{¶25} The prosecutor said that for Mrs. Moss to say they boarded up the windows because the girls were exposing themselves to a neighbor was belied by the fact that appellant's house is so far from the nearest house, it would have been impossible for a neighbor to see them.

{¶26} R.M., the oldest child who left appellant's house in 2009, told the court in a statement that appellant's crimes had severely impacted his life. He said he suffers from attachment disorder, severe anger, and depression due to appellant's treatment. He said these conditions adversely affect his ability to have a decent life. He said that because appellant constantly belittled him, he has lost faith in himself and has no self-confidence. He often becomes overwhelmed and does not believe he can accomplish

anything.  He said appellant repeatedly threatened and beat him and even now when he sees him, he is still afraid of him.

{¶27}  S.M. told the court in a statement that appellant ruined her childhood and the childhoods of her siblings and she will never forget the pain and suffering appellant inflicted on her, her sister, and her brother.  She said appellant used to lock them up for hours every day, had them use buckets for toilets in their rooms, and they were only allowed to leave their rooms for a short time to eat once or sometimes twice a day.

{¶28}  A.M. told the court in a statement that appellant often spanked her with a paddle, sometimes hitting her hundreds of times per incident, and by the time he was done, there was blood on the paddle.

{¶29}  The prosecutor told the court that what appellant had done to these children was a "tragedy" and asked the court to impose the maximum sentence of 15 years in prison.  Appellant asked for community control.

{¶30}  The court sentenced appellant to two years in prison for each of the four counts of endangering children and for the one count of attempted felonious assault to which he pled guilty.  The court ordered that these terms be served consecutively, for a total of ten years.  It should be noted that appellant's wife was also charged, pled guilty, and was sentenced.  She has filed a separate appeal.

{¶31}  Appellant appeals his sentence, asserting the following for his sole assignment of error:

{¶32}  "The trial court erred by sentencing the defendant-appellant to a term of imprisonment contrary to statute and where its findings were not supported by the record."

7

{¶33} Before addressing this assignment of error, a few preliminary matters deserve comment. First, appellant argues that the evidence presented by the prosecutor and the victims during the plea and sentencing hearings conflicted with appellant's version of events and that the victims lacked credibility. In effect, appellant presents a manifest-weight challenge to the evidence. However, it is well settled that "[a] guilty plea waives a defendant's right to challenge the sufficiency or manifest weight of the evidence." *State v. Hill*, 8th Dist. Cuyahoga No. 90513, 2008-Ohio-4857, ¶6; *State v. Williams*, 6th Dist. Lucas No. L-02-1221, 2004-Ohio-4856, ¶12. By pleading guilty, appellant waived any challenge based on alleged conflicts in the evidence or the credibility of the state's witnesses.

{¶34} Next, in appellant's statement of the sole issue presented for review, he indicates the court erred by imposing "maximum sentences." However, none of the sentences imposed by the trial court were maximum sentences. While the maximum sentence for each charge to which appellant pled guilty was three years with maximum potential exposure of 15 years, the court sentenced him to two years for each count, for a total of ten years.

{¶35} Further, appellant's statement of his assignment of error is completely different from his argument. In his assigned error, he alleges his sentence was contrary to law because the court's findings were not supported by the record. However, in contrast, he argues the court did not consider all of the seriousness and recidivism factors in imposing sentence.

{¶36} The Supreme Court of Ohio, in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, held that appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2) when reviewing felony sentences. *Id.* at ¶1. Thus, applying the

plain language of that statute, the Supreme Court held that "an appellate court may vacate * * * a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.*

{¶37} The Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, held that R.C. 2929.11 and R.C. 2929.12 do not mandate judicial fact-finding. *Foster* at ¶42. Rather, in sentencing a defendant for a felony, "a court is merely required to 'consider' the purposes and principles of sentencing in R.C. 2929.11 and the statutory * * * factors set forth in R.C. 2929.12." *State v. Lloyd*, 11th Dist. Lake No.2006-L-185, 2007-Ohio-3013, ¶44.

{¶38} A reviewing court will presume the trial court considered all appropriate sentencing factors, even if the record is silent. *State v. Kish*, 11th Dist. Lake No.2010-L-138, 2011-Ohio-4172, ¶8. Further, there is no requirement that the court state on the record that it considered the statutory sentencing criteria. *Id.* However, "[*t*]*he trial court satisfies its obligation to consider the seriousness and recidivism factors in R.C. 2929.12 by stating that it considered them.*" (Emphasis added.) *State v. Brown*, 11th Dist. Lake No.2014-L-075, 2015-Ohio-2897, ¶34.

{¶39} The sole argument presented by appellant is that, because the court expressly discussed the more-serious factors in R.C. 2929.12(B) and the factors making recidivism likely in R.C. 2929.12(D), but did not discuss the factors making the offenses less serious in R.C. 2929.12(C) or the factors making recidivism not likely in R.C. 2929.12(E), this rebuts the presumption that the court considered all seriousness and recidivism factors. However, during the sentencing hearing and in the court's sentencing entry, *the court expressly stated that it considered the seriousness and*

9

*recidivism factors in R.C. 2929.12.* By stating it considered these factors, the court satisfied its obligation under R.C. 2929.12 to consider them. *Brown, supra.* The trial court stated at sentencing:

**{¶40}** *The Court's considered both recidivism and seriousness factors * * *.* In regards to recidivism factors, the Court notes that the Defendant[ ] ha[s] no * * * criminal record prior to these offenses at either the juvenile or adult level. The Defendant[ ] ha[s] led [a] law-abiding li[fe] for a significant amount of years prior to committing these offenses.

**{¶41}** Today here in court, the Defendant[ ] state[d] that [he is] sorry for what [he has] done and that [he has] failed the children, the victims here. However, the statements that were provided in the Presentence Investigation Reports by the Defendant[ ] cause[s] the Court some concern.

**{¶42}** It does appear that in regards to remorse, the Defendant[ ] state[s] that although [he is] sorry, [he] condition[s] that with placing some * * * blame on the victims and governmental offices. However, the Court does note the remorse that was stated here in the courtroom * * *.

**{¶43}** * * *

**{¶44}** In regards to seriousness factors, certainly there's multiple victims here. These victims have suffered physical and psychological harm. These victims were entrusted to the Defendant[ ], and the parent/child relationship existed.

**{¶45}** The physical or mental injuries suffered by the victims due to the conduct of the offender[ ] was exacerbated by the victims' physical or mental condition or age of the victims. Some victims were young, they were under the age of 18 [or] were developmentally delayed.

**{¶46}** In addition, the Defendant['s] relationship with the victims facilitated these offenses as the victims were the Defendant['s] adopted children * * *.

**{¶47}** * * *

**{¶48}** The court notes that * * * the conduct of the Defendant[ ] * * * occurred over a period of time which is substantial, over approximately a couple of years.

10

**{¶49}** And sadly, * * * this conduct took place among multiple victims in the same household. These were separate acts against separate children.

**{¶50}** * * *

**{¶51}** This case saddens the Court to an unbelievable level, and what occurred in this case is wholly unacceptable. You were placed, Mr. * * * Moss, in a position to care for these children, and as you stated and as this Court believes, you failed them.

**{¶52}** * * *

**{¶53}** [T]he Defendant[ ] recklessly tortured and cruelly abused the children * * * for a prolonged period of time * * *. (Emphasis added.)

**{¶54}** Even if the court discussed only the more serious and likely-to-reoffend factors, this would not mean that it did not consider the less serious and not-likely-to-reoffend factors. Rather, it would mean that in considering the seriousness and recidivism factors, the court gave weight to the factors it discussed while giving no weight to the others. "A trial court is not required to give any particular weight or emphasis to a given set of circumstances; it is merely required to consider the statutory factors * * *." *State v. Delmanzo*, 11th Dist. Lake No.2007-L-218, 2008-Ohio-5856, ¶23.

**{¶55}** Contrary to appellant's argument, the trial court could have considered the less-serious factors listed by appellant were *not* present here, i.e., R.C. 2929.12(C)(2) (that appellant acted under strong provocation); R.C. 2929.12(C)(3) (that appellant did not cause or expect to cause physical harm); or R.C. 2929.12(C)(4) (that there were substantial grounds to mitigate appellant's conduct).

**{¶56}** Further, contrary to appellant's argument, the court discussed the not-likely-to-reoffend factors in R.C. 2929.12(E)(1), (2), and (3) (that appellant had no prior offenses as a juvenile or adult and had previously led a law-abiding life). In addition,

11

appellant *concedes* the court discussed the not-likely-to-reoffend factor in R.C. 2929.12(E)(5) (that appellant showed remorse). The fact that the court discussed these not-likely-to-reoffend factors shows the court considered the less seriousness and not-likely-to-reoffend factors, thus defeating appellant's assignment of error.

{¶57} We therefore cannot say that, by clear and convincing evidence, appellant's sentence is contrary to law.

{¶58} For the reasons stated in this opinion, the assignment of error is overruled. It is the order and judgment of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.