[Cite as *State v. Weathersbee*, 2019-Ohio-5307.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2018-T-0099** |
| - vs - | : | |
| BERNARD WEATHERSBEE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2016 CR 00251.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Bernard Weathersbee*, pro se, PID: A754-058, Belmont Correctional Institution, P.O. Box 540, 68518 Bannock Road, St. Clairsville, OH 43950 (Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Bernard Weathersbee, appeals a judgment in the Trumbull County Court of Common Pleas sentencing him to a term of 29 years in prison for various felony acts of sexual criminal conduct. Weathersbee entered a voluntary plea of guilty on October 22, 2018, and was sentenced the same day. We affirm the trial court's judgment.

{¶2} Weathersbee lived with his girlfriend, Amanda Fitzgerald ("Amanda"), and her minor daughter, H.F., in Mineral Springs, Ohio. On March 25, 2016, Amanda and

H.F. appeared at the Niles Police Department to report that Weathersbee had been sexually assaulting H.F. for approximately ten years. The sexual conduct alleged included both sexual acts and solicitation of sexually explicit photographs, videos, and messages on Weathersbee's cell phone. Weathersbee was subsequently arrested.

{¶3} On May 18, 2016, Weathersbee was indicted on twenty-nine counts, including seventeen counts of Rape (F-1), seven counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance (F-2), one count of Unlawful Sexual Conduct with a Minor (F-3), three counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance (F-4), and one count of Tampering with Evidence (F-3).

{¶4} On May 19, 2016, Weathersbee entered a plea of not guilty at his arraignment on the indictment, and bond was set at $250,000.00. Counsel for Weathersbee requested funds to retain an expert for trial, which the trial court granted. Thereafter, on December 29, 2017, counsel filed a motion in limine challenging the process used to extract photographs, videos, messages, and other content from Weathersbee's cell phones. The motion was denied on June 7, 2018, after a hearing, and the matter was set for trial.

{¶5} Throughout the proceedings, Weathersbee sent several letters to the trial court, which were filed to the record by the clerk of courts, expressing his dissatisfaction with his appointed counsel. His original appointed counsel resigned from representation due to a personal conflict. Weathersbee refused multiple plea offers from the state and, according to the prosecution and defense counsel, was insistent on going to trial.

{¶6} On the morning of trial, October 22, 2018, Weathersbee appeared with counsel and requested to voice his concerns on the record. He was permitted to address

2

the court, where he expressed his continuing frustration with his appointed defense counsel. In addition to refusing to utilize the expert witness that was hired, Weathersbee asserted that his defense counsel (1) had predetermined that he was guilty and (2) was incapable of proceeding to trial. In support of the latter, Weathersbee disclosed that his counsel had stated that he "does not know how to represent him" and that he would only be able to "hold his hand through a three day slaughter."

{¶7} Defense counsel rebutted Weathersbee's claims on the record by asserting that using an expert witness is an exercise of legal strategy, that neither the expert that had been retained nor any other expert would be helpful to Weathersbee's case, and that he was not optimistic for the results of proceeding to trial in light of the overwhelming evidence Weathersbee faced. Defense counsel acknowledged that he had previously made comments similar to those Weathersbee claimed regarding a "slaughter," but he stated they were with regard to his outlook on trying the matter to a jury. Defense counsel was clear in his rebuttal that he was ready, willing, and capable of proceeding to trial.

{¶8} Following a recess, Weathersbee entered a plea of guilty to seventeen counts of Rape (F-1), six counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance (F-2), and one count of Unlawful Sexual Conduct with a Minor (F-3). Pursuant to the terms of the plea agreement, Weathersbee agreed to a jointly recommended prison sentence of 29 years total. The trial court engaged in a plea colloquy with Weathersbee before accepting the oral and written plea of guilty, which began as follows:

> The Court: Are you currently under any drugs or alcohol to cause your judgment to be impaired?
>
> The Defendant: No, sir.

3

The Court: Can you read and write the English language?

The Defendant: Yes, sir.

{¶9} The trial court then stated the maximum penalties for each charge, informed Weathersbee that a prison term was mandatory, and informed him of his sex offender status and post-release control sanctions. Following that, the court inquired:

The Court: Do you understand the seriousness of the offenses and what the Court could sentence you to?

The Defendant: Yes, sir.

{¶10} The trial court also informed Weathersbee of the following regarding the elements of the charges he faced:

The Court: If you wanted to in this case you could have a jury trial. That means the Court would impanel 12 people. In order to find you guilty they would have to find to their unanimous satisfaction, that means all 12 would have to agree that the State of Ohio proved its case against you by a burden of proof called beyond a reasonable doubt.

In this particular matter, they would have to prove with respect to Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 13, 14, 16, 17, 21, 22 and 23 that you did engage in sexual conduct with another when you purposely compelled the other person to submit by force or threat of force in Trumbull County, Ohio.

Regarding Counts 10, 12, 15, 18, 19 and 20 the State would have to prove that you did photograph any minor who is not your child or ward in a state of nudity or create, direct, produce or transfer any material or performance that shows the minor in states of nudity in Trumbull County, Ohio.

Regarding Count 24 the State would have to prove that you, who are 18 years of age or older, did engage in sexual conduct with another, not your spouse, when you knew the other person was 13 years of age or older but less than 16 years of age, or you were reckless in that regard, and the offender is 10 or more years older than – or you were 10 years more older [sic] than the other person in Trumbull County, Ohio.

4

Do you understand what your rights to a jury trial would be and what the State would have to prove?

The Defendant: Yes.

The Court: Do you understand by entering a guilty plea here today you would be giving up those rights?

The Defendant: Yes, sir.

{¶11} The trial court then continued with the colloquy, discussing Weathersbee's waiver of rights and his plea as follows:

The Court: Also at that jury trial you have the right to cross examine or confront witnesses and that means you or your attorney could ask questions of any witnesses called upon to testify against you. You also have the right to compulsory process and that means you or your attorney could subpoena witnesses to testify on your own behalf. You also have a Fifth amendment right and that means the State cannot force you or compel you to testify against yourself. Do you understand each and every of those individual rights?

The Defendant: Yes, sir.

The Court: Do you understand by entering a guilty plea here today you would be giving up each and every of those individual rights?

The Defendant: Yes.

The Court: If you were convicted at that jury trial you also have what's called the automatic right to appeal and that means you or your attorney could file a paper with our Court of Appeals stating what errors or irregularities that you or your attorney think occurred at the trial of your case. The Court of Appeals would have to hear that appeal but they may not necessarily agree on what you or your attorney think the errors or irregularities were. If you cannot afford an attorney to represent you on that appeal, the Court would appoint one for you, and if you could not afford a transcript of the proceedings, the Court would provide that for you. Do you understand what your Court of Appeals rights are?

The Defendant: Yes.

The Court: Do you understand by entering a guilty plea here today you would be giving up those rights?

The Defendant: Yes.

The Court: Have any promises or threats been made to you to enter this plea of guilty?

The Defendant: No, sir.

* * *

The Court: Are you satisfied with your attorneys in this case?

The Defendant: Yes, sir.

The Court: Do you think they've done everything they could on your behalf?

The Defendant: Yes.

The Court: Are you satisfied your client understands his constitutional rights and the effect of the waiver thereof?

Defense Counsel: Yes.

The Court: How do you plead to the amended indictment?

The Defendant: Guilty.

The Court: I'm showing you this document called Finding on Guilty Plea to Amended Indictment, is that your signature?

The Defendant: Yes, sir.

The Court: Did you sign that freely and voluntarily?

The Defendant: Yes.

The Court: Any promises or threats made to you to sign this document?

The Defendant: No, sir.

The Court: Do you understand what's contained in this document?

The Defendant: Yes, sir.

The Court: And what I've explained to you?

The Defendant: Yes, sir.

The Court: Any questions whatever?

The Defendant: No, sir.

The Court: Still want to plead guilty?

The Defendant: Yes, sir.

{¶12} Thereafter, Weathersbee waived a presentence investigation. The trial court accepted the terms of the plea agreement, sentencing Weathersbee to the agreed sentence of 29 years in prison.

{¶13} Weathersbee filed a timely notice of appeal through appellate counsel, which raised one assignment of error for our review. After appellate counsel filed a brief on his behalf, Weathersbee terminated his appointed appellate counsel and requested leave to proceed pro se with a new brief containing three amended or supplemental assignments of error. The state filed a motion to strike the supplemental brief. We denied the motion to strike and permitted appellant to file his supplemental assigned errors. The state filed an answer brief in response.

{¶14} We combine appellant's first supplemental assignment of error with appellate counsel's sole assignment of error to avoid redundancy.

{¶15} Weathersbee's assignment of error proffered by appellate counsel states:

[1(a).] THE COURT ERRED BY ACCEPTING APPELLANT'S GUILTY PLEA SINCE HIS PLEA WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTERED.

{¶16} Weathersbee's first supplemental assignment of error states:

7

[1(b).] PETITIONER'S GUILTY PLEA WAS NOT KNOWINGLY AND VOLUNTARY UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

{¶17} Weathersbee and his former appellate counsel both assert his guilty plea was not knowingly, intelligently, and voluntarily entered because he was forced into pleading guilty due to his trial counsel being unprepared to try the case. There is nothing in the record to support this contention. Trial counsel is an experienced criminal trial attorney. He unequivocally stated he was prepared to go forward with trial on the date set. He expressed concern as to the gravity of the charges Weathersbee was facing. There is no requirement that counsel assess the chances to succeed at trial in a more favorable light than a defendant would like.

{¶18} A criminal defendant who enters a plea of guilty or no contest waives certain constitutional rights, thus the waiver must be made knowingly, intelligently, and voluntarily. *State v. Stewart*, 51 Ohio St.2d 86, 92-93 (1977). Crim.R. 11(C)(2) sets forth the procedure a trial judge must follow when accepting a plea in felony cases:

> [T]he court * * * shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against

8

him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶19} Compliance with Crim.R. 11 "ensures that defendants enter pleas with knowledge of rights that they would forgo and creates a record by which appellate courts can determine whether pleas are entered voluntarily." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶11, citing *State v. Nero*, 56 Ohio St.3d 106, 107 (1990). "When a trial judge fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), the guilty or no-contest plea is invalid 'under a presumption that it was entered involuntarily and unknowingly.'" *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶31, quoting *Griggs*, *supra*, at ¶12.

{¶20} The Ohio Supreme Court has instructed that a trial court must strictly comply with Crim.R. 11(C) as it relates to the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶18, citing *State v. Ballard*, 66 Ohio St.2d 473, 479 (1981). Failure to literally comply with the language of Crim.R. 11(C)(2)(c) does not, however, invalidate a plea agreement so long as the record demonstrates that the trial court explained or referred to the constitutional rights "'"in a manner reasonably intelligible to that defendant."'" *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, ¶14, quoting *Veney*, *supra*, at ¶27 (emphasis sic), quoting *Ballard*, *supra*, at paragraph two of the syllabus.

{¶21} Weathersbee lists a series of alleged violations by the trial court, which he argues invalidates his guilty plea. These alleged violations include: (1) unnamed violations of federal law, including the due process clause of the Fourteenth Amendment;

9

(2) not receiving notice of the elements of his crimes; (3) the trial court "improperly participat[ing] in the plea negotiations"; (4) Weathersbee's expectation to go to trial in the matter; (5) the trial court failing to appoint new counsel; and (6) the state changing the plea offer once it was rejected prior to trial.

{¶22} Contrary to Weathersbee's contention in this regard, the record reflects he was fully advised by the trial court. The court strictly complied with Crim.R. 11, and the responses from Weathersbee indicate that he subjectively understood the implications of his plea and the rights he was waiving under the totality of the circumstances. The colloquy reproduced above, as well as the "Finding on Guilty Plea to Amended Indictment" document in the record signed by Weathersbee and incorporated into the colloquy, demonstrates as much. Conjecture regarding Weathersbee's sentencing following the guilty plea is inappropriate in light of the agreed plea and stipulated sentence, which the trial court was within its discretion to accept and impose.

{¶23} The sole assignment of error offered by Weathersbee's former appellate counsel and Weathersbee's first supplemental assignment of error are without merit.

{¶24} Weathersbee's second supplemental assignment of error states:

> [2.] PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF THE SIXTH AMENDMENT.

{¶25} Under his second assignment of error, Weathersbee lists the following issues for review, which we combine and consider accordingly:

> [i.] Failure to discuss and investigate facts of the case with the defendant;
>
> [ii.] Did not interview potential witnesses;
>
> [iii.] Did not review evidence in support of the charges;

10

[iv.] Told the defendant that he would be found guilty and sentenced to the maximum sentence regardless whether [sic] he had committed the crime and that would [sic] not take case to trial;

[v.] Failed to discuss defense tactics, strategies or the nature and effect of his guilty plea(s);

[vi.] Made no effort to produce mitigation evidence at the sentencing hearing;

[vii.] Further evidence that counsel was ineffective and conflicted.

{¶26} In order to prevail on an ineffective assistance of counsel claim on direct appeal, an appellant must demonstrate from the record that trial counsel's performance fell "below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus (adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 143.

{¶27} There is a general presumption that trial counsel's conduct is within the broad range of professional assistance. *Id.* at 142. Debatable trial tactics generally do not constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). In order to show prejudice, the appellant must demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Bradley*, *supra*, at paragraph three of the syllabus.

{¶28} The Ohio Supreme Court has addressed the duty owed by an attorney to a client when discussing the potential legal outcome of a case in *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶151, where the court stated, in pertinent part:

11

As we held in [*State v. Cowans*, 87 Ohio St.3d 68, 73 (1999)], """A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism."" *Brown v. United States* (C.A.D.C.1959), 264 F.2d 363, 369 (en banc), quoted in *McKee v. Harris* (C.A.2, 1981), 649 F.2d 927, 932. "'If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice."" *Cowans*, 87 Ohio St.3d at 73, 717 N.E.2d 298, quoting *McKee*, 649 F.2d at 932, quoting *McKee v. Harris* (S.D.N.Y.1980), 485 F.Supp. 866, 869.

{¶29} Further, "[w]hen affidavits or other proof outside the record are necessary to support an ineffective assistance claim * * * it is not appropriate for consideration on direct appeal." *Supra*, at *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶4, citing *State v. Madrigal*, 87 Ohio St.3d 378, 390-391 (2000). Those claims are appropriately brought by way of a motion for post-conviction relief.

{¶30} Based on the record before us, Weathersbee was given a candid assessment of his legal options. His counsel met with an expert and declined to utilize the expert based on the meeting. Counsel's legal opinion, as stated on the record, was that no expert testimony would help in Weathersbee's defense given the circumstances. Nothing in the record before us suggests this assessment is inaccurate. Counsel also stated on the record that he was prepared to go forward with a trial, and that his advice to Weathersbee—no matter how candid and blunt—was his legal opinion regarding the likely outcome given the evidence possessed by the state.

{¶31} As was discussed at length on the record by both defense counsel and the prosecutor, Weathersbee was made aware of the pending plea offers from the state throughout the time between the indictment and trial, and he continued to reject those offers until the day of trial. Further, Weathersbee's own statement to the trial court during

12

the colloquy was that he was satisfied with his counsel and in agreement that "they've done everything they could on [Weathersbee's] behalf."

{¶32} Finally, Weathersbee's assertions about what he was told or what was discussed with him by appointed counsel, without supporting evidence, "would require this Court to act in a way that is 'purely speculative' and would require [us to] resort to evidence outside the record on appeal." *Zupancic, supra*, at ¶5. Nothing in the record before us supports Weathersbee's claim that his counsel was ineffective.

{¶33} Weathersbee's second supplemental assignment of error is without merit.

{¶34} Weathersbee's third supplemental assignment of error states:

[3.] PETITIONER IS ACTUALLY INNOCENT.

{¶35} In his third assignment of error, Weathersbee challenges the weight and sufficiency of the evidence, reiterates the previous two assignments of error discussed above, and essentially seeks to point out challenges to and flaws in the evidence and testimony that would have been presented by the state if the matter had gone to trial.

{¶36} "[I]t is well settled that '[a] guilty plea waives a defendant's right to challenge the sufficiency or manifest weight of the evidence.'" *State v. Moss*, 11th Dist. Ashtabula No. 2016-A-0047, 2017-Ohio-1507, ¶33, quoting *State v. Hill*, 8th Dist. Cuyahoga No. 90513, 2008-Ohio-4857, ¶6, citing *State v. Williams*, 6th Dist. Lucas No. L-02-1221, 2004-Ohio-4856, ¶12. By pleading guilty, Weathersbee waived any challenge based on alleged conflicts in the evidence or the credibility of the state's witnesses.

{¶37} Additionally, Weathersbee waived his constitutional rights to, inter alia, a jury trial, the right to cross examine or confront witnesses, and the right to compulsory process—both in court during the required colloquy reproduced above and in the "Finding

13

on Guilty Plea to Amended Indictment" signed by Weathersbee and incorporated into the colloquy. For the reasons discussed in Weathersbee's first assignment of error, this waiver of rights and guilty plea was knowingly, intelligently, and voluntarily made. Therefore, Weathersbee is unable to prevail on the arguments raised in his third assignment of error.

{¶38} Weathersbee's third supplemental assignment of error is without merit.

{¶39} The judgment of the Trumbull County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

14